UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

RENEE SEWELL, et al.,                              :
                                                   :
                                  Plaintiffs,      :
                                                   :          **OPINION & ORDER**
                   - against -                     :
                                                   :          **09 Civ. 6548 (RLE)**
BOVIS LEND LEASE, INC. and BOVIS LEND              :
LEASE LMB, INC.,                                   :
                                                   :
                                  Defendants.      :
_____

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4-16-12

**RONALD L. ELLIS, United States Magistrate Judge:**

## I. INTRODUCTION

This action was commenced as a putative class action under Federal Rule of Civil Procedure 23 by Plaintiff Renee Sewell on behalf of herself and others similarly situated as current and former employees of Defendant Bovis Lend Lease, Inc. and Bovis Lend Lease LMB, Inc. ("Bovis"). Sewell and class members, including class representative Emily Diangson, worked as assistant project managers, project managers, project engineers and other salaried employees below a project manager, who performed similar work to Sewell though under a different title. Amended Compl. ¶¶ 5, 36 ("Compl."). Sewell and class members alleged violations of the Fair Labor Standards Act (FLSA), New York Labor Law (NYLL) and NJSWHL (New Jersey State Wage and Hour Law). Sewell and Diangson now seek certification of the settlement class, approval of the class action settlement and approval of the FLSA settlement. In addition, Plaintiffs seek approval for attorney's fees and expenses associated with litigating this case as well as a service award for both Sewell and Diangson as class representatives.

## II. BACKGROUND

Sewell, a project engineer, and Diangson, an assistant project engineer, were employed by Defendants in New York and New Jersey. Mot. for Cert. of Settlement Class ("Mot. for Settlement"), Exh. A, at 1. On July 23, 2009, Plaintiffs commenced this action as a putative class action alleging violations of FLSA, NYLL and NJSWHL on behalf of themselves and others similarly situated. Sewell filed a First Amended Complaint on August 17, 2009, adding Diangson as a plaintiff in the action. She alleged that Bovis 1) failed and/or refused to pay Plaintiffs overtime for hours worked in excess of forty hours per week, 2) failed to maintain accurate records documenting the time Plaintiffs worked, and 3) mistakenly classified workers as exempt to avoid the obligation of overtime pay. Compl. ¶¶ 41, 48. Sewell alleged that she worked in excess of forty hours most weeks and sometimes worked more than fifty hours, but never received overtime compensation, and Bovis failed to keep accurate records of her performance. Compl. ¶¶ 54-57. Diangson made similar allegations. *Id.* at ¶¶ 58-62.

Class members in the present action number 603 persons (Swartz Decl. ¶ 39) and include any and all persons who have been employed by Bovis as a project engineer, assistant project manager, assistant superintendent, field engineer, senior field engineer, contract administrator, field administrative manager, project control representative, senior contract administrator, and/or senior inspector in New York at any point between July 23, 2003, and December 31, 2010, with the exception of persons on Bovis's payroll for fewer than three pay periods. Not. of Mot. for Cert. of Settlement Class 2. The Settlement Agreement proposes to distribute monies from the settlement to two classes of employees: the "NY Class" will consist of those employed between July 23, 2003, and December 31, 2010, while the "FLSA Class" will consist of those employed between March 4, 2007, and December 31, 2010. Swartz Decl. ¶¶ 23-27.

In January 2010, the Parties agreed to submit themselves to non-binding mediation in an attempt to resolve the dispute. Mot. for Cert. of the Settlement Class, Final Approval of Class Action Settlement and Approval of FLSA Settlement 2 ("Mot. for Settlement"). In preparation for mediation, they exchanged discovery that would allow for damages calculations, including data provided by Defendants on the number of workers "in each of the Class Positions, average number of workweeks, and average compensation." *Id.* Defendants also produced sample time records for project engineers and assistant project managers. The exchange of discovery did not initially prove successful, but in early 2011 the Parties arrived at the settlement reflected in the Joint Stipulation of Settlement and Release ("Settlement Agreement"). *Id.* at 3-4.

The Settlement Agreement created a fund of $2,530,000 for the wage and hour and collection action, inclusive of attorney's fees and any service awards. Mot. for Settlement 5. Notice of the settlement was sent to all class members on June 9, 2011, by the Claims Administrator, Settlement Services, Inc. ("SSI"). Swartz Decl. ¶¶ 36, 41. Additionally, Defendants sent notice per the Class Action Fairness Act ("CAFA") to the appropriate state and federal officials. The 90-day notice period required by CAFA expired on January 18, 2012, and no government officials have objected to the settlement. *See* Mot. for Settlement 4.

On September 7, 2011, the Court granted preliminary approval of the class action settlement, conditional certification of the settlement class, appointment of class counsel and approval of Plaintiffs' notice of settlement. Order Granting Pls' Prelim. Approval of Class Action Settlement, ECF No. 58. As a result, notice has been mailed to class members of the preliminary settlement and only four members have opted out, with one class member objecting to the settlement, as of the date of this Order. Scwhartz Decl., Exh. B ¶ 14; Notice of Filing of Opt Out by the Settlement Administrator, Doc. No. 69. For the reasons which follow,

3

certification of the class is **GRANTED** and the final class settlement and FLSA settlement are

**APPROVED**.

## III. DISCUSSION

### A.    CERTIFICATION OF THE CLASS IS APPROPRIATE AS THE REQUIREMENTS OF RULE 23 ARE SATISFIED.

#### 1.    The Class Satisfies the Prerequisites of Rule 23(a).

Before assessing whether a class action settlement can be approved, the Court must first

ascertain whether the class itself can be certified, even if preliminary certification has been

granted, as in the instant case.  Class action certification requests must satisfy both Rule 23(a)

and Rule (23(b) of the Federal Rules of Civil Procedure.  Rule 23(a) states that certification may

be appropriate if:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there
> are questions of law or fact common to the class, (3) the claims or defenses of the
> representative parties are typical of the claims or defenses of the class; and (4) the
> representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

#### a.    Numerosity

Numerosity is easily satisfied here as it is presumed to be satisfied in this Circuit with at

least forty members, *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995),

and there are 603 former and current employees in this class.

#### b.    Commonality

The commonality requirement under Rule 23(a)(2) refers to claims among members that

are "common to the class as a whole."  *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979).  "The

commonality requirement is met if plaintiffs' grievances share a common question of law or of

fact."  *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).  For purposes of judicial

4

economy and convenience for all parties, class certification may be granted where "class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Shakhnes ex rel. Shakhnes v. Eggleston*, 740 F. Supp 2d 602, 625 (S.D.N.Y. 2010).

The claims raised by class members in the instant action are identical in that they commonly allege failure by Bovis to abide by state and federal labor laws. The NYLL class assert "identical claims that Defendants failed to pay them overtime in violation of the NYLL." Mot. for Settlement 10. Although there are two separate classifications of members - the NYLL group and the FLSA group - who may not share exact experiences in terms of uncompensated or improperly compensated hours worked, the claims are based on similar allegations, which give rise to the same or similar legal arguments. *See Califano*, 442 U.S. 682, 701; *Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.*, 504 F.3d 229, 245 (2d Cir. 2007) (citing *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001); *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011) (noting commonality requires that class members suffer the same injury.) The common allegations to the whole class include

> "(a) whether [Defendants] misclassified Plaintiffs and NY Class Members as exempt; (b) whether Defendants maintained true and accurate time records for all hours worked by Plaintiffs and NY Class Members; (c) what proof of hours worked is sufficient where an employer fails in its duty to maintain time records; and (d) whether Defendants acted wilfully or in reckless disregard of the NYLL."

Mot. for Settlement 10-11. In *Wal-Mart*, the Supreme Court stated that what is critical is not necessarily that all members raise "common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of

the litigation." *Wal-Mart Stores, Inc.*, 131 S.Ct. at 2551 (quoting Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U.L.Rev. 97, 131–32 (2009)) (emphasis in original). Settlement here provides an answer to the common issues raised by all class members, regardless of specific type of injury suffered by the alleged violations of state and federal wage and hour laws.

### c. Typicality

Separate from commonality, typicality requires that the claims of the class representatives be typical of those of the class, and "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376; Fed. R. Civ. P. 23(a)(3). However, the Supreme Court has noted that the elements of commonality and typicality tend to merge. *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n. 13. Typicality does not require that the "'factual predicate of each claim be identical to that of all class members'; rather, it 'requires that the disputed issue of law or fact'" be considered equally central in both the named class representative's claim as it is in claims of the class members. *Attenborough v. Const. and General Bldg. Laborers' Local 79*, 238 F.R.D. 82, 94 (S.D.N.Y. 2006) (citing *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999)).

Plaintiffs' claims arise from the same factual and legal circumstances that give rise to all class members' claims. Allegations of failure to pay overtime would apply to all New York class members since they were classified as exempt and performed the same or similar duties. "The unique circumstances of each (plaintiff) do not compromise the common question of whether . . . defendants have injured all class members by failing to meet their federal and state

law obligations." *Marisol A.*, 126 F.3d at 377.  Typicality is met in this case.

### d.    Adequacy

Lastly, the court must assess whether the class representative will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  An adequacy determination must consist of assessing the credibility of the plaintiff(s) and whether there are any potential conflicts of interest between the proposed plaintiff(s) and class members. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549 (1949) (noting class interests are dependent upon the class representative's credibility and knowledge); *see also Epifano v. Boardroom Business Products, Inc.*, 130 F.R.D. 295, 300 (S.D.N.Y.1990) (noting that contribution claims against class representatives may create conflicts of interest with the class, compromising their credibility). The Court can find no facts demonstrating Plaintiffs' lack of knowledge about the salient aspects of this case or any potential conflicts of interests they may have with class members, nor has Bovis pointed to any.

### 2.    The Class Satisfies the Certification Requirements under Rule 23(b)(3).

In addition to satisfying the four components describing the class and claims under Rule 23(a), Plaintiffs must also satisfy Rule 23(b).  Plaintiffs argue that the case satisfies Rule 23(b)(3), which requires that

> [t]he court find that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>> (D) the likely difficulties in managing a class action.

7

Fed. R. Civ. P. 23(b)(3). As long as there are common issues of fact or law applicable to the class that predominate over individual claims, Rule 23(b)(3) is satisfied despite individualized damages that particular members may sustain. *See Shahriar v. Smith & Wollensky Restaurant Group, Inc.*, 659 F.3d 234, 253 (2d Cir. 2011); *Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010) ("it is well-established that the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification.") That common questions of fact or law predominate, i.e., the predominance requirement, "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). A common nexus of fact or law, particularly in FLSA cases, can include the fact that all plaintiffs were subject to the same company-wide policy that violated federal labor laws. *Shahriar*, 659 F. 3d at 253. Here, the allegations are that Defendants misclassified all members of the class and failed to compensate them adequately based on their proper non-exempt status, resulting in violations of the same state and federal labor laws for all class members. That damages may vary and differ by person is irrelevant to certifying a class under Rule 23(b)(3).

In addition to the issue of predominance, Plaintiffs must establish that a class action is a superior mechanism to all other alternative means and forums. The rule itself contemplates a number of factors for the Court to consider. A class can only be certified if it "achieve[s] economies of time, effort, and expense, and promote[s] uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Myers v. Hertz, Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) (internal citations omitted). Plaintiffs argue that it would be financially improbable for all class members to litigate their claims individually, as well as a burden on the court. The Court finds that class action suits are

8

appropriate where judicial economy can preserve scarce judicial resources and common issues and claims can be consolidated. It is equally appropriate for the Court to consider the financial capacity of class members in considering whether the means exists to enforce their rights outside of the class action. *See McBean v. City of New York*, 228 F.R.D. 487, 503 (S.D.N.Y. 2005) (citing *Labbate-D'Alauro v. GC Services Ltd. P'ship*, 168 F.R.D. 451, 458 (E.D.N.Y. 1996)) ("It is appropriate for the court [in examining Rule 23(b)(3)superiority] to consider the inability of the poor or uninformed to enforce their rights and the improbability that large numbers of class members would possess the initiative to litigate individually.) Based on these considerations, the Court finds that the elements of Rule 23 have been satisfied.

**B.      FINAL APPROVAL OF THE SETTLEMENT IS MERITED AS THE SETTLEMENT IS FOUND TO BE PROCEDURALLY AND SUBSTANTIVELY FAIR.**

Plaintiffs ask this Court to approve the Parties' joint Settlement Agreement creating a Fund of $2,350,000 that would cover class members' awards, attorney's fees and costs, and any service awards to named Plaintiffs. Although the Parties jointly arrived at this amount, it is at least in part based on Plaintiffs' assessment of various documents produced in discovery, including "job descriptions, pay records, time sheets, personnel documents and corporate documents." Mot. for Settlement at 3. In addition, Plaintiffs' counsel conducted interviews to get information related to the hours worked and wages paid to each Plaintiff. Swartz Decl. ¶ 10. The Parties agreed to the proposed amount in the Settlement Agreement and that none of the Fund will revert back to Defendants. Mot. for Settlement 5; Swartz Decl. ¶ 23; Ex. A (Settlement Agreement ¶ 3.1(A) and (E)).

Disbursement of the award will be based on the length of employment of each class

member at Bovis as determined by a point system whereby members are assigned a point for each

pay period worked, with an additional three points assigned for each pay period worked by the

FLSA Class between March 4, 2007, and December 31, 2010 (resulting in four points for pay

periods falling in this time frame).  Mot. for Settlement 6.  The additional points are in

"recognition of the risks these class members incurred by joining the lawsuit . . . [in protecting]

their FLSA rights."  *Id.*  This would include their right to 100% liquidated damages under FLSA

in addition to their unpaid wages claims.  *Id.*

Under Rule 23(e)(1)-(3), settlements of class actions claims, issues or defenses must have

court approval and include the following procedures:

(1)    The court must direct notice in a reasonable manner to all class members who
       would be bound by the proposal.
(2)    If the proposal would bind class members, the court may approve it only after a
       hearing and on finding that it is fair, reasonable, and adequate.
(3)    The parties seeking approval must file a statement identifying any agreement made
       in connection with the proposal.

Fed. R. Civ. P. 23(e).  The court's approval is necessary to ensure that any settlement reached is

procedurally and substantively fair, as well as reasonable and adequate.  Procedural fairness is

ascertained by examining the process that led to the settlement (*Wal-Mart Stores, Inc. v. Visa*

*U.S.A.*, 396 F.3d 96 (2d Cir. 2005)), while substantive fairness considers the actual terms and

whether those terms are reasonable and adequate per the *Grinnell* factors.  *City of Detroit v.*

*Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) (*abrogated on other grounds, Goldberger v.*

*Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)).

1.    **Procedural Fairness**

In considering the process leading to settlement, a "presumption of fairness, adequacy,

and reasonableness may attach to a class settlement reached in arm's-length negotiations between

10

experienced, capable counsel after meaningful discovery." *In re Sony Corp. SXRD*, 2011 WL 4425361, at *1 (2d Cir. 2011) (citing *Wal-Mart Stores*, 396 F.3d at 116) (internal citations omitted). Settlement in a class action context is highly encouraged by the courts as sound public policy while promoting judicial economy. *Id.* The Parties here arrived at settlement after some discovery, a session with an experienced employment mediator and months-long settlement talks. Mot. for Settlement 3. There is evidence that Plaintiffs engaged in extensive discovery that included reviewing voluminous documents of both Plaintiffs and Defendants and conducting interviews of class members. The Court finds that the settlement is procedurally fair and reasonable based on the Parties' adequate negotiations at arm's length and independent investigations.

### 2.     Substantive Fairness

In evaluating the substantive fairness of the settlement, the courts must "independently [examine] whether the interests of all class members were adequately represented." *In re Literary Works in Electronic Databases Copyright Litigation*, 654 F.3d 242, 254 (2d Cir. 2011). Courts apply the *Grinnell* factors to determine substantive fairness, which include, "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Grinnell*, 495 2d. at 463.

11

### a.   Complexity, Expense and Likely Duration of Litigation

Litigating the claims of hundreds of putative class members would undoubtedly yield

expensive litigation costs that can be curbed by settling the action. *See In re Nasdaq Market-*

*Makers Antitrust Lit.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998) ("[C]lass actions 'have a well

deserved reputation as being most complex.'") (internal citations omitted). Additional discovery

would include the depositions of a number of individuals and would be fact-intensive given the

number of class members involved. Preparation for trial would involve potentially hundreds of

class members and would seriously prolong the outcome of this suit in addition to consuming

tremendous amounts of time, expenses and judicial resources. Mot. for Settlement 18. The Court

finds this factor supports a finding of substantive fairness of the settlement.

### b.   Reaction of the Class

"If only a small number of objections are received, that fact can be viewed as indicative of

the adequacy of the settlement." *Wal-Mart*, 396 F.3d at 118 (citing 4 Newberg § 11.41, at 108);

*In re Austrian and German Bank Holocaust Litigation*, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000);

*see also Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (finding settlement

favored despite 29 objections out of 281 class members). Here, only three class members out of

603 have opted out of the settlement, and there was one objection. Plaintiffs assert that adequate

notice was provided, and this Court has no reason to believe otherwise as that assertion has not

been challenged. A settlement notice must "fairly apprise the prospective members of the class of

the terms of the proposed settlement and of the options that are open to them in connection with

the proceedings." *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982). It must also be

"understood by the average class member." *Wal-Mart*, 396 F. 3d at 114 (internal citations

omitted). Moreover, "a district court's decision regarding the form and content of notices sent to

class members is reviewed only for an abuse of discretion." *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 438 (2d Cir. 2007). The notice sent out explained in detail to class members their rights to opt out of the class and an estimate of each class member's potential award. The fact that the overwhelming majority of class members have neither objected nor opted out weighs in favor of settlement approval.

### c.     Stage of Proceedings

While discovery is not complete, enough discovery has been completed for the Parties to ascertain an adequate settlement on behalf of the class. "The Court need not find that the parties have engaged in extensive discovery. Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make . . . an appraisal' of the Settlement." *In re Austrian*, 80 F. Supp. 2d at 176 (internal citations omitted). The Parties have exchanged thousands of pages of documents and Plaintiffs' counsel has interviewed numerous class members. Mot. for Settlement 18, 20. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 87 (2d Cir. 2001) (stating that "although no formal discovery had taken place, the parties had engaged in an extensive exchange of documents and other information" which weighed in favor of settlement approval.) The purpose of this factor is to ensure there is no collusion between the parties. Here, there are no facts to suggest any collaboration. The Parties engaged in months of litigation and negotiation and even endured a failed mediation session before arriving at settlement. After substantial document review and interviews of class members, the Parties seem to be in a position to evaluate a fair and reasonable settlement.

### d.     Risks to Establishing Liability and Damages

In assessing the Plaintiffs' exposure to real weaknesses in their case regarding allegations of liability, the Court does not need to reach the merits of Plaintiffs' arguments. *See Carson v.*

13

*American Brands, Inc.*, 450 U.S. 79, 88 n. 14 (1981). The Court must only "weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *Marisol A. ex rel. Forbes v. Giuliani*, 185 F.R.D. 152, 164 (S.D.N.Y. 1999). Plaintiffs admit that their case is "not without risk." Mot. for Settlement 20. In addition, risks are inherent in litigation and Plaintiffs would have to secure favorable outcomes at trial and after a likely appeal to establish liability. Defendants assert that class members were classified as "exempt," meaning they were ineligible to qualify for overtime pay. Plaintiffs would have to undergo much more factual discovery to disprove this defense and it's unknown exactly what costs and resources that would require. Because settlement eliminates the uncertainty naturally involved in litigation, *see Matheson v. T-Bone Restaurant, LLC*, 2011 WL 6268216, at *5, (S.D.N.Y. Dec. 13, 2011), the Court finds this factor weighs in favor of settlement.

Additionally, even if Plaintiffs were to prevail on liability, there is no guarantee a jury would award them damages in the amount they seek, or even nominal damages. *See Wal-Mart*, 396 F. 3d at 118. Thus, "even assuming that plaintiffs had a strong chance of success at trial with respect to liability, the relief granted by the Settlement Agreements is sufficiently favorable to weigh in favor of approval of the Settlement Agreements." *Marisol A.*, 185 F.R.D. at 164.

### e.   Maintaining the Action Throughout Trial and Withstanding Greater Judgment

While the Court is granting Plaintiffs' application for certification of the class under Rule 23, the possibility of decertification as discovery progresses is always possible. *See Wal-Mart*, 396 F. 3d at 119 fn 124. A contested class would inevitably require additional briefing, discovery, and litigation expenses by Plaintiffs. The settlement ensures that Plaintiffs are granted damages that are deemed fair and adequate while alleviating the need to enforce a judgment or

14

seek collection.   While there is no evidence the Defendants could not undergo further greater

judgment, the contrary is unproven as well.  The Court finds this factor neutral and not

determinative of whether the settlement should be approved.

     **f.**     **Possible Recovery and Attendant Risks of Litigation**

Inevitably, there will be class members who believe that they would have gotten a larger

award for damages had they proceeded to trial, and while that may be true, it also does not take

into account the increased litigation expenses or Defendants' ability to pay. *See In re Austrian*,

80 F. Supp. 2d at 178. Class counsel is responsible for ensuring a fair settlement to the class as a

whole, and for distributing it in the manner that is most fair to all members based on their

individual damage assessments.  Class members here will each receive a payment under the

settlement based on their length of employment with Defendants and whether he or she consented

to join the FLSA class.  Ultimately, the Settlement here "represents a compromise between the

strengths of Plaintiffs' case and the possible success of [Defendants'] defenses." *Cronas v. Willis*

*Group Holdings, LLC*, 2011 WL 6778490, at *4 (S.D.N.Y. Dec. 19, 2011) (citing *Frank v.*

*Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005)).  This Court finds the proposed

settlement to be procedurally and substantively fair and **GRANTS FINAL APPROVAL** of the

settlement.

**C.**     **ADEQUATE NOTICE WAS PROVIDED TO THE CLASS**

Notice of the class as approved by the Court was mailed by the Claims Administrator,

SSI, to all class members on June 9, 2011. Mot. for Settlement 7. The mailings were made in

accordance with a list provided by Bovis. SSI found new addresses for members who had moved

and re-mailed notices to 49 members. *Id.* A total of 110 op-in forms were returned to SSI, ten of

which were untimely but accepted and one of which was untimely and denied.      Notice of the

preliminary settlement was mailed on October 13, 2011, to eligible class members, including 109

FLSA members and 365 NYLL members.  The notice included the estimated award each class

member would receive based on length of employment.  SSI again found new addresses for

relocated members and re-mailed notices to 54 class members.  *Id.* at 7-8.  SSI received 37

notices for NYLL members that were returned as undeliverable as of November 10, 2011, but

was able to obtain new addresses for 30 of the 37 and re-mailed notices to them.  The final

postmark date for those to op-out was December 14, 2011, and only four class members have

opted out of the settlement — Dawn Ramos, Thomas Drumm, Mark Patton and Peter McKee

(Swartz Decl. ¶ 46, Exh. B (Patton Decl. ¶ 14), Letter From Peter McKee Opting Out (Rec. Dec.

12, 2011);  Notice of Filing of Opt Out by the Settlement Administrator, Doc. No. 69) — with

one member, Alec Ross, filing an objection with the Claims Administrator. Let. to Claims Admin.

(Rec. Dec. 5, 2011). Mr. Ross's objection concerns his individual share and do not contend that

the settlement is unfair to the class as a whole.  *Id.*  The Court notes his concern, but "the

objection[] raised to this settlement do[es] not alter the conclusion that the amount of the class

action settlement and its terms are entitled to approval." *In re Interpublic Securities Corp.*, 2004

WL 2397190, at *8 (S.D.N.Y. Oct. 24, 2004).  The class members who did not opt-out will

effectively release Defendants from all wage and hour claims under the NYLL that were asserted,

or could have been asserted, in the Complaint.  Mot. for Settlement 5; Swartz Decl., Exh. A

(Settlement Agreement ¶ 2.5).

## D.    APPROVAL OF THE FAIR LABOR STANDARDS ACT (FLSA) CLASS

Plaintiffs ask this Court to also grant final approval to the FLSA class, which requires a

less rigorous standard than Rule 23 of the Federal Rules of Civil Procedure given that due process

concerns are not implicated in the same fashion.  In a FLSA settlement, class members must

affirmatively opt-in to the collective action, but a failure to opt-in does not cause a class member to forfeit the right to bring suit at a later date. *Matheson v. T-Bone Restaurant, LLC*, 2011 WL 6268216, at *6 (S.D.N.Y. Dec.13, 2011). Courts approve FLSA settlements so long as they are the result of contested litigation where adversarial parties reach an agreement on disputed issues. *Id.*; *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n. 8 (11th Cir. 1982). Plaintiffs here were represented by class counsel throughout the settlement process and the settlement was reached as a result of arms-length negotiations. *See Johnson v. Brennan*, 2011 WL 4357376, at *12 (S.D.N.Y. Sept. 16, 2011). Therefore, the FLSA settlement is **APPROVED**.

### E.   APPROVAL OF ATTORNEY'S FEES AND COSTS

In calculating an award for reasonable attorney's fees, courts often utilize the lodestar method which computes the number of hours counsel may work on a particular case by a reasonable fee per each hour. The resulting number may be increased by a multiplier depending on the type of case and work performed or courts may award a percentage of the overall recovery instead. In class action settlements, a common fund is usually created from which damages are awarded and from which attorney's fees may be paid. "Under the common fund doctrine, attorneys who create a fund for the benefit of a class of plaintiffs are entitled to reasonable compensation from that fund." *Victor v. Argent Classic Convertible Arbitrage Fund L.P.*, 623 F.3d 82, 84 (2d Cir. 2010) (noting that "[c]lass action lawsuits are the prototypical example of instances where the common fund doctrine can apply.") Commenting on the use of lodestar, the Second Circuit has said that "the lodestar approach is an accepted but not exclusive methodology in common fund cases" and it remains useful in such cases, even where the percentage method is ultimately chosen. *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).

However, the trend in this Circuit in class action cases is to apply the percentage method because it "'provides a powerful incentive for the efficient prosecution and early resolution of litigation.'" *Wal-Mart*, 396 F. 3d at 121 (internal citations omitted). This method is similar to private practice where counsel operates on a contingency fee, negotiating a reasonable percentage of any fee ultimately awarded. *See Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 522 F.3d 182, 191 (2d Cir. 2008).

Class counsel seek no more than one-third of the total settlement payment of $2,350,000, or $843,340, in addition to reimbursement for their "actual reasonable litigation costs and expenses . . . which shall not exceed $20,000." Swartz Decl. ¶ 23; Ex. A (Settlement Agreement ¶ 3.2(A)). Class counsel have been operating on a contingency fee basis and they, along with support staff, have expended 747 hours prosecuting this case, which results in a lodestar of $288,000. Mot. for App. of Att'y's Fees and Reimbursement of Expenses ("Mot. for Att'y's Fees") 1. The proposed award equals the lodestar amount increased by a multiplier of 2.93. There have been no objections by class members to the proposed award for attorney's fees. While the lack of objections does not relieve the Court of it's obligation to conduct an independent investigation into the reasonableness of the fee, it does lend support for approval of the award. *See Davis v. J.P. Morgan Chase & Co.*, --- F. Supp. 2d ----, 2011 WL 4793835, at *9 (W.D.N.Y. Oct. 11, 2011).

To determine whether $843,340 is a reasonable award of attorney's fees to Class counsel, this Court is guided by the *Goldberger* factors, including (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Goldberger*, 209 F.3d at 50. The most important factor to consider in evaluating

18

an award is moderation. *Id*. at 52-53.

1.     **Time and Labor Expended by Counsel**

It is apparent that class counsel has worked diligently in prosecuting this case on behalf of the class. They have reviewed hundreds of pages of documents related to 603 class members, including "job descriptions, pay records, time sheets, personnel documents and corporate documents." Mot. for Att'y's Fees 6. They conducted interviews and participated in a formal mediation session, albeit unsuccessful. They have also spent months participating in settlement discussions and prepared the settlement agreement for this Court's preliminary approval. The Court recognizes the amount of work put into this case and notes class counsel's efforts to utilize the attorney or paralegal with the lowest hourly rate to perform the work as effectively and competently as possible. *Id*. at 7.

The 747 hours expended are reasonable in a case such as this where records are incomplete and therefore a more comprehensive review of the available records is needed to ensure a proper estimation of damages to the class. Class counsel appropriately divided litigation tasks based upon complexity and cost. The proposed percentage fee also includes future expenses in administering the settlement after litigation has ceased. Mot. for Att'y's Fees 7. In an almost exactly similar scenario, the Court in *Johnson* recognized the acts of class counsel in litigating, negotiating, and settling the case, as well as handling post-settlement administration of the fund. *Johnson*, 2011 WL 4357376, at *15-16. The requested one-third of the fund is a reasonable amount given the time and labor of counsel.

2.     **Magnitude and Complexities of Litigation**

"Courts have recognized that wage and hour cases involve complex legal issues." *Johnson*. 2011 WL 4357376, at *17.  As in other cases before this Court, this case involves

19

factual, and thus legal, disputes regarding the exempt status of certain employees and what, if any, additional compensation they may be owed. It is a "hybrid" case of state wage and hour claims where class members must "opt out" of the action if they do not wish to be a part of the class and a federal claim under FLSA that requires members to "opt in" if they do wish to be part of the class. An award of thirty-three percent, or one-third, of the settlement fund is appropriate given the disputes and is in accordance with this Court's precedent. *See Johnson*, 2011 WL 4357376, at *17; *deMunecas v. Bold Food, LLC.*, 2010 WL 3322580, at *7-8 (S.D.N.Y. Aug. 23, 2010).

### 3.    Risk of the Litigation

A contingency fee arrangement presents a financial risk to class counsel who are asked to front the costs of the litigation with a chance of not receiving any award in return. Mot. for Att'y's Fees 9. "Lawyers undertaking representation of large numbers of affected employees in such actions inevitably must be prepared to make a tremendous investment of time, energy, and resources." *Johnson*, 2011 WL 4357376, at *17. The claim of misclassification placed the burden on plaintiffs to prove that a significant number of people were misclassified and deprived of overtime wages. The disputed facts present issues of credibility and triable issues of fact for a jury to determine. The significant risks presented by litigating the case weigh in favor of approval of the award.

### 4.    Quality of Representation

"To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Johnson*, 2011 WL 4357376, at *17 (citing *Taft v. Ackermans*, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007)). Recovery of $2,350,000 is a sizeable award that ensures all 603 class members will

20

receive a payment corresponding to their length of employment with Defendants. When considering the risk of litigation with the settlement fund, the settlement is reasonable. Additionally, class counsel are members of the respected labor and employment firm Outten & Golden. They are experienced employment lawyers with good reputations among the employment law bar. They have prosecuted and favorably settled many employment law class actions, including wage and hour class actions." *deMunecas*, 2010 WL 3322580, at *7; *see McMahon v. Olivier Cheng Catering and Events, LLC*, 2010 WL 2399328, at *6 (recognizing Outten and Golden as a respected labor and employment firm). In the *deMunecas* case, the court recognized the work put forth by class counsel and approved an attorney's award of thirty-three percent of the common fund. *Id.* Similarly this Court finds class counsel zealously represented the interests of their clients and provided a high quality of representation.

5.      **Requested Fee in Relation to Settlement**

Courts consider the size of the settlement when considering the reasonableness of the award being requested. "Where the size of the fund is relatively small, courts typically find that requests for a greater percentage of the fund are reasonable." *Johnson*, 2011 WL 4357376, at *18. Courts in this Circuit have found that an award of one-third of the settlement fund is considered reasonable where the fund amount was similar to the amount being considered here. *See, e.g., Prasker v. Asia Five Eight LLC*, 2010 WL 476009, at *6 (S.D.N.Y. Jan. 6, 2010) (awarding $1,050,000), *Khait v. Whirlpool Corp.*, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) (granting an award for fees of $3,052,000), and *Mohney v. Shelly's Prime Steak*, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (awarding $3,265,000). In particular, courts in this Circuit have routinely granted attorney's fees awards in the amount of one-third of the settlement in state and FLSA wage and hour class action settlements that involve amounts far larger than the

21

settlement award contemplated here. *See Willix v. Healthfirst, Inc.*, 2011 WL 754862, at \*6 (E.D.N.Y. Feb. 18, 2011) ($7,675,000 settlement fund); *Clark v. Ecolab, Inc.*, 2010 WL 1948198, at \*8–9 (S.D.N.Y. May 11, 2011) ($6,000,000); *Khait v. Whirlpool Corp.*, 2010 WL 2025106, at \*8 (E.D.N.Y. Jan. 20, 2010) ($9,250,000); *see also Westerfield v. Wash. Mut. Bank,*2009 WL 5841129, at \*4–5 (E.D.N.Y. Oct.8, 2009) ( 30% of $38 million fund). A fee of one-third, or thirty-three percent, of the settlement fund is consistent with this Circuit's established law. *Johnson*, 2011 WL 4357376, at \*19. Ultimately, "[d]istrict courts in the Second Circuit routinely award attorney's fees that are 30 percent or greater." *Velez v. Novartis Pharmaceutical Corp.*, 2010 WL 4877582, at \*21 (S.D.N.Y. Nov. 10, 2010).

### 6.    Public Policy Considerations

Were this action not settled via the class action format, hundreds of individual claims would be brought before this Court, consisting of an inefficient use of judicial resources. "Where relatively small claims can only be prosecuted through aggregate litigation, 'private attorneys general' play an important role." *Khait*, 2010 WL 2025106, at \*8 (*citing Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980)). Private attorneys prosecuting wage and hour claims must be adequately compensated for their time and labor. "If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk." *Prasker v. Asia Five Eight LLC*, 2010 WL 476009, at \*6 (S.D.N.Y. Jan. 6, 2010). Attorneys who protect labor rights must be adequately compensated and such compensation "furthers the remedial purposes of the FLSA and the NYLL." *Id.* This factor also favors approval of the settlement.

## F.    THE LODESTAR CROSS CHECK SUPPORTS APPROVAL OF THE AWARD

When applying the percentage method to an award for attorney's fees, courts in this Circuit follow the trend of applying the lodestar method as a "cross-check" to ensure the

reasonableness of the award. *Goldberger*, 209 F.3d at 50. "[W]here [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court. Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Davis*, 2011 WL 4793835, at *10 (citing *Goldberger*, 209 F.3d at 50). The lodestar is assessed by "multiplying the hours reasonably expended on the case by a reasonable hourly rate." Courts then consider factors such as: "(1) the contingent nature of the expected compensation for services rendered; (2) the consequent risk of non-payment viewed as of the time of filing the suit; (3) the quality of representation; and (4) the results achieved." *Johnson*, 2011 WL 4357376, at *20 (internal citations omitted).

Courts commonly award lodestar multipliers between two and six. *See id.* (discussing cases where lodestar multipliers between 2.09 and six were awarded). Additionally, where "class counsel will be required to spend significant additional time on this litigation in connection with implementing and monitoring the settlement, the multiplier will actually be significantly lower" because the award includes not only time spent prior to the award, but after in enforcing the settlement. *Bellifemine v. Sanofi*, 2010 WL 3119374, at *6 (S.D.N.Y. Aug. 6, 2010). Class counsel's 747 hours spent litigating this case generates a lodestar of $288,000. A lodestar multiplier of three falls well within the range granted by our Courts and equals the one-third percentage being sought. For the reasons discussed above, the award for attorney's fees of one-third share of the overall settlement fund is **GRANTED**.

## G.     APPROVAL OF EXPENSES UNDER SETTLEMENT AGREEMENT

"Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients." *Miltland Raleigh–Durham v. Myers*, 840 F. Supp. 235, 239

(S.D.N.Y. 1993) (internal citations omitted).  Where a common fund has been created,

"[i]t is well-established that counsel who create [it] . . . are entitled to the reimbursement of [all

reasonable] litigation costs and expenses . . . ." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 150

(S.D.N.Y. 2010).  Expenses and costs in class action settlements total approximately 2.8 percent

of total recovery nationwide, which in the instant case would be $65,800. *Velez*, 2010 WL

4877582, at *24.

The Settlement Agreement allows for class counsel to seek reimbursement of expenses

and costs up to $20,000, well below the national average.  Class counsel seeks reimbursement of

that amount despite their actual expenses totaling $28,000. Mot. for Att'y's Fees 15.  The costs

include Plaintiff's share of mediator's fees, expert fees, telephone charges, fees charged by the

claims administrator, postage, transportation and meals during working sessions, copies and

electronic research. *Id.* An award of $20,000 in costs and expenses is hereby **GRANTED**.

## H.   APPROVAL OF THE SERVICE AWARDS FOR THE CLASS REPRESENTATIVES

Plaintiffs Sewell and Diangson are seeking a service award in the amount of $15,000 and

$10,000, respectively, for their vigor in pursuing this case on behalf of the class.  Class awards in

the amount being requested here have been granted before to zealous class representatives in the

prosecution of a class action suit, *see Johnson*, 2011 WL 4357376, at *21; *Reyes v. Altamarea

Grp., LLC.*, 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) (granting an award of $15,000 to

three class representatives); *Duchene v. Michael Cetta, Inc.*, 2009 WL 5841175 (S.D.N.Y. Sept.

10, 2009) (approving an award of $25,000), while much larger awards have also been granted

where merited. *See Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 205 (S.D.N.Y. 1997) (approving

awards of $50,000 and $85,000 to two of the named plaintiffs in a racial discrimination

employment class action); *Wright v. Stern,* 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008) (awarding

$50,000 to each of eleven named plaintiffs in employment discrimination action where total

settlement fund was $11,869,856.25); *Velez,* 2010 WL 4877852, at *26 (granting awards of

$175,000-$425,000 for class members who testified at trial out of a settlement fund of $175

million). In *Khait,* service awards in the amounts being requested here—$10,000 and

$15,000—were granted to named plaintiffs. *Khait,* 2010 WL 2025106, at *9 (granting service

awards in the amount of $15,000 to five class members and $10,000 to ten members out of a

settlement fund of $9,250,000).

Plaintiffs litigating cases in an employment context face the risk of subjecting themselves

to adverse actions by their employer. *See Velez v. Majik Cleaning Serv.,* 2007 WL 7232783, at

*7 (S.D.N.Y. June 25, 2007) (noting that by prosecuting their case, plaintiffs expose themselves

to potential adverse actions by their employer in order that the full class may benefit from the

litigation.) "In discrimination-based litigation, the plaintiff is frequently a present or past

employee whose present position or employment credentials or recommendation may be at risk

by reason of having prosecuted the suit, who therefore lends his or her name and efforts to the

prosecution of litigation at some personal peril." *Roberts,* 979 F. Supp. at 201. While this suit is

not based on claims of discrimination, Sewell and Diangson risked potential exposure of

jeopardizing future employment by joining this suit. *See Parker v. Jekyll & Hyde Entm't

Holdings, L.L.C.,* 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) (awarding class representatives up to

$15,000 out of a settlement fund of $745,000) ("as employees suing their current or former

employer, the plaintiffs face the risk of retaliation. The current employees risk termination or

some other adverse employment action, while former employees put in jeopardy their ability to

depend on the employer for references in connection with future employment."). While Plaintiffs

were not employed by Defendants at the time this suit was brought, as former employees they face potential risks of being blacklisted as "problem" employees. *See Roberts*, 979 F. Supp. at 201. Plaintiff Sewell, in particular, has been the public face of this litigation and has been the subject of several news stories, including one in the New York Daily News. Swartz Decl. in Support of Mot. for Svc Award ¶ 54.

Plaintiffs argue they have served class members by "providing counsel with relevant documents in their possession, assisting counsel to prepare for the mediation, participating in litigation strategy, and reviewing and commenting on the terms of the settlement." Swartz Decl. ¶¶ 32-33. Class counsel asserts that the class representatives provided detailed factual information to class counsel for the prosecution of their claims and made themselves available regularly for any necessary communications with counsel. Mot. for Approval of Class Rep. Svc Awards ("Mot. for Svc Award") 1; Swartz Decl. in Support of Mot. for Svc Award ¶ 55. No class members have filed any objections to the proposed service awards established under the Settlement Agreement. The service awards in the proposed amounts of $10,000 for Plaintiff Sewell and $15,000 for Plaintiff Diangson are therefore **GRANTED**.

**DATED: April 16, 2012**
**New York, New York**

_Ronald Ellis_

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**

Copies were sent to:

CLASS COUNSEL

Adam T. Klein, Esq.
Rachel Bien, Esq.
Outten & Golden, LLP
3 Park Avenue, 29th Floor
New York , NY 10016

COUNSEL FOR DEFENDANTS

Jason Steven Aschenbrand
Winston & Strawn, LLP
200 Park Avenue
New York, NY 10166

Joan B. Tucker Fife
Winston & Strawn, LLP
101 California Street
San Francisco, CA 94111

Kevin M. Cloutier
Winston & Strawn, LLP
35 West Wacker Drive
Chicago, IL 60601
PRO HAC VICE